UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERT RENDON G.,[1] <br><br> Plaintiff, <br><br> v. <br><br> NANCY A. BERRYHILL, Acting Commissioner of Social Security, <br><br> Defendant. | Case No. EDCV 18-0592-JPR <br><br> **MEMORANDUM DECISION AND ORDER REVERSING COMMISSIONER** |

**I.   PROCEEDINGS**

Plaintiff seeks review of the Commissioner's final decision denying his applications for Social Security disability insurance benefits ("DIB") and supplemental security income benefits ("SSI"). The parties consented to the jurisdiction of the undersigned U.S. Magistrate Judge under 28 U.S.C. § 636(c). The matter is before the Court on the parties' Joint Stipulation,

---

[1] Plaintiff's name is partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

1

filed January 2, 2019, which the Court has taken under submission without oral argument. For the reasons stated below, the Commissioner's decision is reversed and this action is remanded for further proceedings.

## II. BACKGROUND

Plaintiff was born in 1967. (Administrative Record ("AR") 41.) He completed high school (AR 42) and worked "general construction" jobs, most recently as a "construction paint[er]" (AR 43).

Plaintiff applied for DIB on April 2, 2014 (AR 302),[2] and for SSI on January 16, 2015 (AR 24),[3] alleging that he had been disabled since February 10, 2014 (AR 24, 302). He claimed disability from "arthritis in [his] right hip" and "possible hip replacement needed." (AR 217.) After his DIB application was denied initially (AR 227) and on reconsideration (AR 239), he requested a hearing before an Administrative Law Judge (AR 254). A hearing was held on April 26, 2016, at which Plaintiff, who was represented by an attorney, testified, as did a vocational expert. (AR 39-54.) In a written decision issued August 2, 2016, the ALJ found Plaintiff not disabled. (AR 24-33.) Plaintiff requested review from the Appeals Council (AR 300-01) and submitted additional medical records, including a detailed

---

[2] The parties and the ALJ state that the DIB application was filed on April 1, 2014. (See AR 24; J. Stip. at 2.) The timing of that application is not at issue here, and the Court uses the April 2 date listed on the application summary. (See AR 302.)

[3] The record does not contain documentation of Plaintiff's SSI application, but the ALJ and the parties state that he filed one in January 2015 alleging disability beginning February 10, 2014. (AR 24; J. Stip. at 2.)

2

opinion from his treating orthopedic surgeon indicating his residual functional capacity. (See AR 10-12.) The Appeals Council declined to consider that opinion and other evidence because it did not relate to the period at issue. (AR 2.) It found that newly submitted evidence from the relevant time period did not "show a reasonable probability"[4] of changing the ALJ's decision. (Id.) The Appeals Council denied the request for review on February 22, 2018. (AR 1-4.) This action followed.

**III. STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free of legal error and supported by substantial evidence based on the record as a whole. See Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such evidence as a reasonable person might accept as adequate to support a conclusion. Richardson, 402 U.S. at 401; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla but less than a preponderance. Lingenfelter, 504 F.3d at 1035 (citing Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019). To determine whether substantial

---

[4] The standard in the Ninth Circuit is whether the new evidence raises a reasonable "possibility," not "probability," that the outcome of the proceeding would have been different had the ALJ considered it. See Mayes v. Massanari, 276 F.3d 453, 462 (9th Cir. 2001) (as amended).

3

evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for the Commissioner's. Id. at 720-21.

**IV.   THE EVALUATION OF DISABILITY**

People are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or has lasted, or is expected to last, for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

A.   The Five-Step Evaluation Process

The ALJ follows a five-step sequential evaluation process to assess whether a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995) (as amended Apr. 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim must be denied. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

If the claimant is not engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work

4

activities; if not, the claimant is not disabled and his claim must be denied. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments set forth at 20 C.F.R. part 404, subpart P, appendix 1; if so, disability is conclusively presumed. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).

If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient residual functional capacity ("RFC")[5] to perform his past work; if so, he is not disabled and the claim must be denied. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). The claimant has the burden of proving he is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets that burden, a prima facie case of disability is established. Id.

If that happens or if the claimant has no past relevant work, the Commissioner then bears the burden of establishing that the claimant is not disabled because he can perform other substantial gainful work available in the national economy. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); Drouin, 966 F.2d at 1257.

---

[5] RFC is what a claimant can do despite existing exertional and nonexertional limitations. §§ 404.1545, 416.945; see Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). The Commissioner assesses the claimant's RFC between steps three and four. Laborin v. Berryhill, 867 F.3d 1151, 1153 (9th Cir. 2017) (citing § 416.920(a)(4)).

5

That determination comprises the fifth and final step in the sequential analysis. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

B. The ALJ's Application of the Five-Step Process

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 10, 2014, the alleged disability onset date. (AR 26.) At step two, he concluded that he had the following severe impairments: "bilateral hip osteoarthritis vs. degenerative joint disease, bursitis of the right hip, lumbar degenerative disc disease, and obesity[.]" (AR 27.) At step three, he found that he did not have an impairment or combination of impairments that met or equaled a Listing. (AR 27-28.)

At step four, the ALJ determined that Plaintiff had the RFC to perform light work[6] with some additional limitations:

> He can lift and carry 20 pounds occasionally and 10 pounds frequently. The claimant can stand and walk for six hours in an eight-hour day. He can sit for six hours in an eight-hour day. The claimant can occasionally

---

[6] "Light work" is defined as

lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

§§ 404.1567(b) & 416.967(b).

1 | climb ramps and stairs but never climb ladders, ropes,
2 | and scaffolds. He can occasionally balance, stoop,
3 | kneel, crouch, and crawl. The claimant should avoid
4 | extreme cold and hazards.

(AR 28.) Based on the VE's testimony, the ALJ concluded that Plaintiff could not perform his past relevant work as a construction worker. (AR 31.)

At step five, he found that given Plaintiff's age, education, work experience, and RFC, and "[b]ased on the testimony of the vocational expert," he could perform at least three representative jobs in the national economy. (AR 32.) Thus, he found Plaintiff not disabled. (AR 33.)

## V. DISCUSSION[7]

### The Commissioner Did Not Properly Consider the Medical Evidence in Determining Plaintiff's RFC

Plaintiff contends that the ALJ erred in finding that he could stand for six hours a day on a continuous basis. (See J. Stip. at 4.) He argues that in so finding the ALJ improperly failed to weigh the opinion of treating orthopedic surgeon

---

[7] In Lucia v. SEC, 138 S. Ct. 2044, 2055 (2018), the Supreme Court held that ALJs of the Securities and Exchange Commission are "Officers of the United States" and thus subject to the Appointments Clause. To the extent Lucia applies to Social Security ALJs, Plaintiff has forfeited the issue by failing to raise it during his administrative proceedings. (See AR 39-54, 378-79); Meanel v. Apfel, 172 F.3d 1111, 1115 (9th Cir. 1999) (as amended) (plaintiff forfeits issues not raised before ALJ or Appeals Council); see also generally Kabani & Co. v. SEC, 733 F. App'x 918, 919 (9th Cir. 2018) (rejecting Lucia challenge because plaintiff did not raise it during administrative proceedings), pet. for cert. filed, __ U.S.L.W. __ (U.S. Feb. 22, 2019) (No. 18-1117).

7

Stephen Chow (see id. at 7-9, 12-15) and rejected Plaintiff's subjective symptom statements (see id. at 6-8). He further contends that the new evidence he submitted to the Appeals Council from Dr. Chow demonstrates that the ALJ mistakenly assessed his RFC based on old evidence that did not reflect the progressive nature of his condition, which was steadily deteriorating. (See id. at 9.) As discussed below, remand is warranted based on the Commissioner's failure to consider Dr. Chow's medical opinion.

A. Applicable law

A claimant's RFC is "the most [he] can still do" despite the impairments and related symptoms that "may cause physical and mental limitations that affect what [he] can do in a work setting." §§ 404.1545(a)(1), 416.945(a)(1). A district court must uphold an ALJ's RFC assessment when the ALJ has applied the proper legal standard and substantial evidence in the record as a whole supports the decision. Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005). The ALJ must consider all the medical opinions "together with the rest of the relevant evidence." §§ 404.1527(b), 416.927(b);[8] see also §§ 404.145(a)(1),

---

[8] Social Security regulations regarding the evaluation of opinion evidence were amended effective March 27, 2017. When, as here, the ALJ's decision is the final decision of the Commissioner, the reviewing court generally applies the law in effect at the time of the ALJ's decision. See Lowry v. Astrue, 474 F. App'x 801, 804 n.2 (2d Cir. 2012) (applying version of regulation in effect at time of ALJ's decision despite subsequent amendment); Garrett ex rel. Moore v. Barnhart, 366 F.3d 643, 647 (8th Cir. 2004) ("We apply the rules that were in effect at the time the Commissioner's decision became final."); Spencer v. Colvin, No. 3:15-CV-05925-DWC, 2016 WL 7046848, at *9 n.4 (W.D. Wash. Dec. 1, 2016) ("42 U.S.C. § 405 does not contain any

8

416.945(a)(1) ("We will assess your residual functional capacity based on all the relevant evidence in your case record.").

Three types of physicians may offer opinions in Social Security cases: (1) those who directly treated the plaintiff, (2) those who examined but did not treat the plaintiff, and (3) those who did neither. Lester, 81 F.3d at 830. A treating physician's opinion is generally entitled to more weight than an examining physician's, and an examining physician's opinion is generally entitled to more weight than a nonexamining physician's. Id.; see §§ 404.1527(c)(1), 416.927(c)(1). This is so because treating physicians are employed to cure and have a greater opportunity to know and observe the claimant. Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996).

The ALJ may reject a treating physician's opinion whether or not that opinion is contradicted. Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). When a treating physician's opinion is not contradicted by other medical-opinion evidence, however, it may be rejected only for a "clear and convincing" reason. Id.; see Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008) (citing Lester, 81 F.3d at 830-31). When it is contradicted, the ALJ must provide only a "specific and legitimate reason[]" for discounting it. Carmickle, 533 F.3d at 1164 (citing Lester, 81 F.3d at 830-31).

An ALJ may not disregard a treating physician's opinion

---

express authorization from Congress allowing the Commissioner to engage in retroactive rulemaking"). Accordingly, citations to §§ 404.1527 and 416.927 are to the versions in effect from August 24, 2012, to March 26, 2017.

9

unless he sets forth "specific, legitimate reasons for doing so that are based on substantial evidence in the record." Smolen, 80 F.3d at 1285 (citation omitted). "[A]n ALJ errs when he rejects a medical opinion" by "doing nothing more than ignoring it." Garrison v. Colvin, 759 F.3d 995, 1012-13 (9th Cir. 2014) (citing Nguyen v. Chater, 100 F.3d 1462, 1464 (9th Cir. 1996)).

The Court must consider the ALJ's decision in the context of "the entire record as a whole," and if the "'evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld." Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) (citation omitted).

At the time of the relevant proceedings here, Social Security regulations allowed claimants to submit "new and material evidence to the Appeals Council and require[d] the Council to consider that evidence in determining whether to review the ALJ's decision, so long as the evidence relate[d] to the period on or before the ALJ's decision." Brewes v. Comm'r of Soc. Sec. Admin., 682 F.3d 1157, 1162 (9th Cir. 2012); see also §§ 404.970(b), 416.1470(b). "[W]hen the Appeals Council considers new evidence in deciding whether to review a decision of the ALJ, that evidence becomes part of the administrative record, which the district court must consider when reviewing the Commissioner's final decision for substantial evidence." Brewes, 682 F.3d at 1163. Remand is necessary when a "reasonable possibility" exists that "the new evidence might change the outcome of the administrative hearing." Mayes v. Massanari, 276 F.3d 453, 462 (9th Cir. 2001) (as amended); Borrelli v. Comm'r of Soc. Sec., 570 F. App'x 651, 652 (9th Cir. 2014).

Medical examinations after the ALJ's decision may still relate to a claimant's conditions "during the relevant time period." Handy v. Colvin, No. CV 14-02149-SH., 2014 WL 4895678, at *3 (C.D. Cal. Sept. 30, 2014). In such circumstance, the Appeals Council errs in dismissing the evidence solely because it was dated after the ALJ's decision. See id.; see also Baccari v. Colvin, No. EDCV 13-2393 RNB., 2014 WL 6065900, at *2 (C.D. Cal. Nov. 13, 2014) (that claimant submitted evidence to Appeals Council that was "generated after the ALJ's decision . . . is not dispositive of whether the evidence was chronologically relevant" and collecting cases). This is especially true when the plaintiff's condition is "chronic" or relatively "longstanding." See Baccari, 2014 WL 6065900, at *2 (citations omitted); Bergmann v. Apfel, 207 F.3d 1065, 1070 (8th Cir. 2000) (finding that posthearing evidence required remand because it concerned deterioration of "relatively longstanding" impairment).

B. Medical evidence from Dr. Chow

Plaintiff saw orthopedic surgeon Chow regularly from December 2014 through April 2016 for hip pain. (See AR 421-25, 480-507.) At each visit, Dr. Chow noted his antalgic Trendelenburg gait[9] (see AR 422, 480, 484, 488, 492, 496, 500, 505) and tested his right-hip range of motion (see AR 423, 481, 485, 489, 492-93, 497, 500-01, 505). The results revealed the same scores virtually every time, indicating right-hip pain with

---

[9] The Trendelenburg gait is abnormal and is caused by weakness of the hip abductor muscles. See Trendelenburg Gait, Physiopedia, https://www.physio-pedia.com/Trendelenburg_Gait (last visited May 6, 2019).

11

movement. (Id.) At his April 3, 2015 visit, Plaintiff reported that injections and physical therapy were "moderately helpful." (AR 504.) At visits on May 15 and June 24, 2015, he noted having had injections the week before that relieved 70 percent of his pain. (AR 496, 500.) Although those injections were "still working," he reported that the pain was coming back. (Id.) By June 24, 2015, he could walk only a short distance before needing to stop. (AR 496.) He stated that the injections "ha[d] been helpful." (AR 498.) Dr. Chow prescribed Norco.[10] (AR 498.) In August and September 2015, Plaintiff was still experiencing "some pain" but the "shot still seem[ed] to be working," and Norco was "helpful." (AR 488, 492.) At his three visits preceding the hearing, he noted that injections and Norco were helping and that there was "no real change" in his condition. (AR 488, 490 (Sept. 16, 2015), 484, 486 (Jan. 6, 2016), 480, 482 (Apr. 13, 2016).) At every visit, Dr. Chow explained that Plaintiff needed a hip replacement but recommended delaying surgery until better, longer-lasting prosthetics became available. (See AR 424-25, 482-83, 486-87, 490-91, 494-95, 498-99, 502-03, 506-07.)

Plaintiff provided the Appeals Council additional evidence from Dr. Chow, including treatment notes from two office visits in 2016 and an RFC questionnaire Dr. Chow had filled out on October 31, 2016. (See AR 74-78 (June 10, 2016 office visit),

---

[10] Norco is name-brand hydrocodone-acetaminophen. See Norco, WebMD, https://www.webmd.com/drugs/2/drug-63/norco-oral/details (last visited May 6, 2019). Hydrocodone is an opioid pain reliever. Id.

12

69-73 (Oct. 28, 2016 office visit), 10-12 (RFC questionnaire).)[11] Records from Plaintiff's June 10, 2016 visit to Dr. Chow noted that his hip pain was "now . . . progressive[.]" (AR 74.) He had an antalgic Trendelenburg gait, a limited range of motion, and pain with movement. (AR 74-75.) A straight-leg-raising test was painful. (AR 75.) Dr. Chow assessed him with "right hip symptomatic osteoarthritis" and stated that conservative treatment had failed. (AR 76.) He noted that Plaintiff was now using a cane and had "severe pain about the hip interfering with functional daily activities, especially with the initiation of activities and weightbearing." (Id.) Plaintiff decided to proceed with hip-replacement surgery, and Dr. Chow gave his authorization for the procedure.[12] (AR 77.) The notes reference right-hip x-rays taken on June 13, 2016, which showed "increased interval degenerative changes and joint space narrowing[.]" (AR 75.) Treatment notes from Plaintiff's October 28, 2016 visit to Dr. Chow are nearly identical (compare AR 69-73, with AR 74-78) except that at the later visit Dr. Chow also assessed him as "unable to work" (AR 71).

Dr. Chow completed an RFC questionnaire for Plaintiff on October 31, 2016, less than three months after the ALJ's

---

[11] Plaintiff also gave the Appeals Council evidence concerning a shoulder injury (AR 57-68, 93-94, 100-05) for which he first sought treatment after the ALJ's decision (see AR 102-05 (earliest treatment records for shoulder pain from Sept. 13, 2016)). The Appeals Council properly found that that evidence "did not relate to the period at issue." (AR 2.)

[12] The record does not reflect whether Plaintiff actually had hip-replacement surgery. As of June 2017, he had "decided to hold off on [it] for now[.]" (AR 64.)

13

decision. (AR 10-12.) He indicated that he had been seeing Plaintiff "bimonthly" and diagnosed him with "right hip osteoarthritis[.]" (AR 10.) He listed his "symptoms" as "severe pain in right hip" and noted that he "[could] not walk too much and [could] not work." (Id.) Dr. Chow noted that he could walk one to two city blocks without rest or severe pain and checked a box indicating that he could stand for less than two hours in an eight-hour day. (Id.) Dr. Chow also noted that he needed a cane or assistive device "[w]hile engaging in occasional standing/ walking[.]" (AR 11.) He checked a box indicating that Plaintiff's impairments or treatment would make him absent from work more than four days a month. (AR 12.)

The Appeals Council found that the medical records from Dr. Chow postdating the ALJ's August 2, 2016 decision — the October 31, 2016 RFC questionnaire and October 28, 2016 treatment notes — did not "relate to the period at issue." (AR 2.) It concluded that the records from his June 10, 2016 visit did not show a "reasonable probability" of changing the outcome of the ALJ's decision. (Id.) Accordingly, the Appeals Council declined to consider any of that evidence. (Id.)

### C. Analysis

In assessing Plaintiff's RFC, the ALJ gave significant weight to the 2014 opinions of the consulting examining doctor and the state-agency reviewing doctors that Plaintiff could perform a limited range of light exertional work. (AR 30-31.) He considered Dr. Chow's April 16, 2016 medical records and noted that an x-ray that day showed "increased interval degenerative changes and joint space narrowing," demonstrating, as Plaintiff

14

contends (see, e.g., J. Stip. at 7), that his condition was getting progressively worse. (See AR 29 (citing AR 480-82).) The ALJ also noted that Dr. Chow diagnosed Plaintiff with "right hip osteoarthritis." (Id.) Yet he failed to indicate what weight, if any, he assigned to Dr. Chow's opinion or to discuss its credibility at all.[13] The ALJ therefore erred in not providing a specific and legitimate reason for apparently rejecting the portion of the opinion relating to the progressive nature of Plaintiff's impairments (or, for that matter, any reason at all).[14] See Smolen, 80 F.3d at 1285.

This error was compounded by the Appeals Council's failure to consider Dr. Chow's medical opinions postdating the hearing, and remand is appropriate so that the ALJ can reconsider his decision in light of that evidence. First, it related to the relevant time period. The RFC questionnaire (AR 10-12) and the October 28, 2016 treatment notes (AR 69-72) postdated the ALJ decision by only about three months, and they concerned Plaintiff's longstanding hip condition (see AR 451 (showing that Plaintiff sought treatment for hip pain as early as January 2012)). Such evidence was "chronologically relevant" to

---

[13] Although current rules define a "medical opinion" as focusing on functional abilities and limitations, see §§ 404.1527(a)(1), 416.927(a)(1) (effective Mar. 27, 2017), under the rules in effect at the time of the ALJ's decision, see supra note 8, a medical opinion included statements about things other than functioning, such as diagnoses, prognoses, and statements about symptoms, see §§ 404.1527(a)(1), 416.927(a)(1) (effective Aug. 24, 2012 through Mar. 26, 2017).

[14] Defendant contends that the ALJ "gave weight to all the medical opinions before him." (J. Stip. at 19.) That is incorrect, as the ALJ did not assign any weight to Dr. Chow's opinion. (See AR 28-31.)

15

Plaintiff's condition at the time of the hearing. Baccari, 2014 WL 6065900, at *2; see also Beltz v. Berryhill, 679 F. App'x 576, 577 (9th Cir. 2017) (remanding to allow ALJ to consider new evidence illuminating "nature, extent, and persistence" of claimant's disability); Stone v. Heckler, 761 F.2d 530, 532 (9th Cir. 1985) (when claimant's condition is progressively deteriorating, most recent evidence is most probative). Therefore, the Appeals Council erred in rejecting the evidence merely because it postdated the ALJ's decision by a few months.

Second, there is a "reasonable possibility" that the new evidence would have changed the outcome of the ALJ's decision. See Borrelli, 570 F. App'x at 652. The ALJ assessed Plaintiff with a limited light RFC, which included the ability to stand or walk for six hours in an eight-hour day. (AR 28.) In doing so, he relied on the 2014 opinions of the examining consultant (AR 30-31) and the reviewing doctors (AR 31) and on objective evidence from 2014 and July 2015 that showed relatively normal physical findings, with Plaintiff's pain eased somewhat by injections (AR 30 (citing 381-82, 407-08, 415-16, 480-82)). That analysis fails to account for the progressive nature of Plaintiff's condition, which the new evidence shows had deteriorated further by the time of the hearing, in mid-2016. For example, Dr. Chow noted on the October 31, 2016 RFC questionnaire that Plaintiff could stand for only less than two hours in an eight-hour day. (AR 10.) He could not walk more than one or two city blocks without resting or experiencing severe pain. (Id.) Indeed, Dr. Chow noted that Plaintiff needed an assistive device even to stand or walk occasionally. (AR 11.)

And his October 28, 2016 treatment notes indicate that Plaintiff's hip pain had progressed to the point of interfering with his ability to bear weight, and conservative treatment had failed. (AR 71.) Nothing indicates that Plaintiff suffered any sudden injury or illness that could account for such a dramatic deterioration in functioning between August 2, 2016, the date of the ALJ's decision, and October 31, when Dr. Chow filled in the RFC questionnaire.

As Plaintiff's longstanding treating physician and a specialist in orthopedics, Dr. Chow and his opinions should presumptively have been afforded great weight. See Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004) ("a treating physician's opinion is generally afforded the greatest weight in disability cases"); §§ 404.1527(c)(2)(i), 416.927(c)(2)(i) ("[T]he longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion."); §§ 404.1527(c)(5), 416.927(c)(5) ("We generally give more weight to the medical opinion of a specialist about medical issues related to his or her area of specialty."). Moreover, nothing in the record indicates that something besides Plaintiff's progressively deteriorating hip condition was responsible for his alleged inability to stand for more than two hours by October 2016. Had the ALJ considered the RFC questionnaire and October 2016 treatment records, he might have determined Plaintiff's RFC — and thus his disability status, at least for some later portion of the relevant period — differently to account for the

progressive nature of his condition.[15]  Accordingly, there is a reasonable possibility that Dr. Chow's later opinions would have changed the outcome of the ALJ's decision.  See Mayes, 276 F.3d 453 at 462; Sheri R. v. Comm'r of Soc. Sec., No. 2:18-CV-00136-MKD, 2019 WL 1586757, at *4 (E.D. Wash. Apr. 12, 2019) (finding reasonable possibility that treating physician's new opinions of plaintiff's longstanding injuries would change outcome of ALJ's decision when, if credited, those opinions conflicted with the assessed RFC).

For these reasons, the Commissioner failed to properly consider the medical evidence in determining Plaintiff's RFC.  Because the ALJ assessed Plaintiff's credibility in part based on his evaluation of the "objective medical evidence" (see AR 28), any reevaluation of the latter will necessarily require a reassessment of Plaintiff's subjective symptom testimony.  Thus, the Court need not reach the issue of Plaintiff's credibility.  See Hiler v. Astrue, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand.").

---

[15] Defendant argues that Dr. Chow's more recent medical records do not "invalidate the evidence" the ALJ cited to support his decision.  (J. Stip. at 20.)  This argument misses the mark, as Plaintiff does not contend that the objective medical evidence cited by the ALJ was "invalid."  Rather, he contends (and the Court agrees) that because his condition was progressive, the new evidence gives a more complete picture of it as of the date of the ALJ's decision.  (See, e.g., id. at 4.)

18

D. <u>Remand for further proceedings is appropriate</u>

When an ALJ errs, as here, the Court "ordinarily must remand for further proceedings." <u>Leon v. Berryhill</u>, 880 F.3d 1041, 1044-45 (9th Cir. 2017) (as amended Jan. 25, 2018); <u>see also</u> <u>Harman v. Apfel</u>, 211 F.3d 1172, 1175-78 (9th Cir. 2000) (as amended); <u>Connett v. Barnhart</u>, 340 F.3d 871, 876 (9th Cir. 2003). The Court has discretion to do so or to directly award benefits under the "credit-as-true" rule. <u>Leon</u>, 880 F.3d at 1045. "[A] direct award of benefits was intended as a rare and prophylactic exception to the ordinary remand rule[.]" <u>Id.</u> The "decision of whether to remand for further proceedings turns upon the likely utility of such proceedings," <u>Harman</u>, 211 F.3d at 1179, and when an "ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency," <u>Leon</u>, 880 F.3d at 1045 (citing <u>Treichler v. Comm'r of Soc. Sec. Admin.</u>, 775 F.3d 1090, 1105 (9th Cir. 2014)).

Here, further administrative proceedings would serve the useful purpose of allowing the ALJ to give proper consideration to Dr. Chow's medical opinions. <u>See</u> <u>Pino v. Colvin</u>, No. CV 14-5524-E, 2015 WL 12661949, at *5 (C.D. Cal. Mar. 24, 2015) (remand appropriate when parties disputed extent and implications of plaintiff's degenerative disc condition and "it [wa]s not clear that the ALJ would be required to find Plaintiff disabled" for entire claimed period "if the rejected medical opinions were fully credited"). In doing so, the ALJ should address the progressive nature of Plaintiff's condition. Therefore, remand for further proceedings is appropriate. <u>See</u> <u>Garrison</u>, 759 F.3d at 1020 & n.26.

**VI. CONCLUSION**

Consistent with the foregoing and under sentence four of 42 U.S.C. § 405(g),[16] IT IS ORDERED that judgment be entered REVERSING the Commissioner's decision, GRANTING Plaintiff's request for remand, and REMANDING this action for further proceedings consistent with this memorandum decision.

DATED: May 7, 2019

/s/ Jean Rosenbluth
JEAN ROSENBLUTH
U.S. Magistrate Judge

---

[16] That sentence provides: "The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."